**WATKINS, Plaintiff, v. COHEN, Defendant.**

Common Pleas Court, Muskingum County.

No. 35176.

**OPINION**

By CROSSLAND, J:—

Briefs of the parties have just now been submitted, so that until this time the court has not had the case under actual consideration.

The controversy in this case arises out of an action by plaintiff seeking to repossess premises leased defendant, on the ground that defendant has defaulted in a term of the lease respecting the amount of rent allegedly due plaintiff from and after August 27, 1946, and for judgment for the difference allegedly due to and including July 26, 1947, defendant in his Answer denying such default or indebtedness.

The controversy in both respects involves a difference of opinion between the parties as to the meaning in said lease of the phrase "for the duration of the present war and one year thereafter," the lease, dated July 27, 1943, providing rent of $125 monthly "for the duration of the present war and one year thereafter", and thereafter at $200 monthly for the five years following.

The premises concerned consist of a store room, basement

and upper floors, at 321 Main Street, Zanesville, occupied and used by defendant as a Men's Clothing business in the retail trade, from the beginning of said lease to date.

The parties in their testimony are in complete disagreement as to what each intended or contemplated in the use of the language in question. The court fails to find from the evidence any expressly declared meaning discussed at all between them either before or at the lease's execution, and considers that any subsequent contention by either is obviously self-serving to their respective positions herein, and that any subsequent conversation is inadequate substitution for the absence of any prior discussion of the meaning to be ascribed.

It is therefore necessarily entirely a matter of what the law considers the parties intended by their language from the language itself under the attending and portending facts and circumstances.

The court further finds and considers that the parties are both in good faith in making and asserting their respective contentions and that the controversy represents an honest difference of opinion between them as to the meaning which should be given their language, and that the same constitutes a genuinely arguable and debatable question.

The court considers that the approach of the law in its definition of the meaning intended by the parties in their relationship with each other under said lease is one of a private business transaction between two business men regarding their personal business affairs, in which they join together for mutual and reciprocal profit, plaintiff contributing thereto his real estate and defendant a personally owned and managed business therein, neither property nor business being in any way related to the existing war effort or any government operation connected therewith. Said lease simply took cognizance of the fact that war then existed and that its duration presumably affected the capacity of the defendant, out of the business he might be expected to enjoy during the continuation of such situation and until a year afterward, to pay more than 5/8 of the amount of monthly rent he could and should pay if the country was in a state of peace instead of one of war, or, in other words, 5/8 of the sum to be paid monthly in time of peace, after one year for business transition from a country at war to one at peace, from a wartime to a peace-time economy.

What the parties were concerned with, from the nature and contemplation of their respective participations in said lease, was not a technical, governmental or political engagement of

the United States in its three wars with Germany, Italy and Japan, for in fact the matter of "wars" was not even alluded to. What both parties were concerned about was the actual existing state of war and the anticipated return of the United States to a factual siutation of peace, one conducive to normal peace-time business—a situation as factual as the facts of their respective operations, both of which contemplated peace, not war, as a measure and opportunity for enhanced business and augmented income. As defendant's retail business prospered through the fact of peace so plaintiff's rental income also and likewise was intended to prosper thereby. That, and that alone, was the natural, logical and therefore the intended contract between them, particularly in the absence of explicit words to the contrary, derived from the very nature of their respective operations and their mutual obvious anticipation of a peace-time economy.

"War", as distinguished from this country's three separate wars with Germany, Italy and Japan, was the then existing armed conflict into which our three current wars had precipitated us as a nation and people. The term "war" was used, therefore, in its generic sense in relation to our general wartime economy, and not in its strictly technical meaning as employed by the government in its relationships with other governments or in its prosecution of the national war effort in each of said three separate engagements.

Moreover, "the present war" was a fighting war, one of actual and employed hostility, in which all the resources of the participating nations were actively mobilized and used by their respective governments for the purpose of seeking to achieve military victory, which was finally attained by the United States and its allies on August 14, 1945.

Undoubtedly the only reason, or at any rate the chief reason, we have not long since had a government declared end of active warfare is not because the war endures, as it was known up to and only until August 14, 1945, but because warfare, that is, the faring or waging of war, was succeeded by what neither of the parties at the time and date of their said lease, to-wit, July 27, 1943, nor any one else at that time, or in fact no one until well after August 14, 1945, anticipated or contemplated and therefore could not and did not intend, to-wit, a state of "cold war", as it is now commonly known and characterized. It is quite clear that there was no contemplation by the parties in their said lease of any so-called "cold war", and "one year thereafter" could not possibly have been intended by them as having its inception at the conclusion of the now existing "cold war". The present "cold

war", so-called, accounting for a situation unintended by either party, should not and can not modify or otherwise affect the terms of a lease. providing for rental increase after one year from the existing war situation of July 27, 1943, which ended August 14, 1945.

Adverting to what was said in an earlier paragraph that the positions of both parties·are honestly taken and advanced in good faith, the court denies forfeiture of the lease sought in plaintiff's first cause of action herein unless defendant hereafter fails and refuses to pay the difference in rent claimed by plaintiff in his second cause of action, upon which plaintiff is entitled to judgment in the sum of $825, with interest thereon at the rate of six per cent per annum, and for plaintiff's costs herein, with exceptions granted both parties; and a journal entry incorporating the findings and conclusions herein may be prepared by counsel for plaintiff and submitted to opposing counsel and then to the court for its approval and filing.